**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAY R. ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 11 C 0513 |
| v. | ) |
| | ) |
| CALIFORNIA CASUALTY INDEMNITY EXCHANGE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On June 6, 2011, Plaintiff Jay B. Ross ("Ross" or "Plaintiff") filed a two-count Second Amended Complaint against Defendant California Casualty Auto and Home Insurance Company ("California Casualty" or "Defendant") alleging a common law breach of contract claim and an attorney's fee claim under the Illinois Insurance Code, 215 ILCS 5/155, based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendant's motion and dismisses this lawsuit in its entirety.[1]

---

[1] The Court denies Defendant's motion brought pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993), as moot because the expert testimony of Thomas Joyce concerning appraisal estimates has no bearing on the Court's determination that Plaintiff failed to perform the required conditions of his homeowners insurance policy.

BACKGROUND

I.      **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment because the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008); *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component

of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

Ross is the owner of residential property located at 940 W. Castlewood Terrace, Chicago, Illinois. (R. 79, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) California Casualty issued a homeowners policy of insurance to Ross under policy number 2017508759 that covered personal property. (*Id.* ¶¶ 2,3; R. 39, R. 85-4, Ex. B, Ins. Policy.) The premises covered by the property is Ross' home on Castlewood Terrace. (*Id.* ¶ 4.) The personal property at issue involves Ross' collection of books and memorabilia. (*Id.* ¶ 6.) Ross stores his collection — which includes approximately 10,000 separate items — on bookshelves and in plastic bins around his home. (*Id.* ¶¶ 8, 9.) Ross admits that he does not maintain any sort of organizational scheme for his collection, except for his books, which he organizes by general subject matter and sometimes by author. (*Id.* ¶ 10.) Furthermore, Ross acknowledges that he did not keep receipts for items that he purchased for his collection or take photographs of his items until fairly recently. (*Id.* ¶¶ 11, 12.) Prior to the incident underlying this lawsuit, Ross did not maintain an inventory or catalogue of his collection. (*Id.* ¶ 13.)

Ross' home was protected by a functional ADT alarm system that secured each entrance to his home. (*Id.* ¶ 14; R. 89, Pl.'s Rule 56.1 Stmt Add'l Facts ¶¶ 1, 3.) Only three people besides Ross knew the code for the alarm system — Mr. Goodnecht, Ross' houseguest; Mr.

3

Southern, Ross' office manager; and Mr. Mandel, the executor of Ross' will. (Def.'s Stmt. Facts ¶ 15; Pl.'s Stmt. Facts ¶ 2.) Some of the windows in Ross' home also had alarm sensors and he had at least one motion detector. (Def.'s Stmt. Facts ¶¶ 16, 17.) In addition, the doors to Ross' home had working deadlocks during the relevant time period, as well as sliding locks on all of the windows. (*Id.* ¶ 20.) All but two of the windows in Ross' home had "burglar bars." (*Id.* ¶ 19.) There were eight security cameras throughout Ross' home, although prior to this litigation, Ross experienced technical problems with his security camera system. (*Id.* ¶ 18; Pl.'s Stmt. Facts ¶ 5.)

At his October 17, 2011 deposition, Ross testified that on February 28, 2008, he discovered that several books, items of popular culture, and currency were missing from his home. (Def.'s Stmt. Facts ¶ 26; Pl.'s Stmt. Facts ¶ 6.) Ross, however, also testified that he did not observe any signs of forcible entry into his home. (Def.'s Stmt. Facts ¶ 27.) He reported the theft on March 23, 2010, and when the police responded to Ross' call, they did not observe any signs of forced entry during their visit. (*Id.* ¶¶ 28, 29; Pl.'s Stmt. Facts ¶ 7.) Further, Ross testified that he had reviewed the security videos and did not see anything suspicious. (Def.'s Stmt. Facts ¶ 30.) Indeed, although Ross thought his domestic employee, Garry Stoutmire, may have taken his items, he did not see Mr. Stoutmire do anything other than his normal work on the security video. (*Id.*; Pl.'s Stmt. Facts ¶ 8.)

It is further undisputed that Ross originally claimed that the alleged theft involved 17 books and numerous items of collectible currency. (Def.'s Stmt. Facts ¶ 31.) Ross, however, had only two receipts for three of the seventeen books he claimed were missing. (*Id.* ¶ 32; Pl.'s Stmt. Facts ¶ 12.) Other than these two receipts, Ross did not have any other documentation

regarding his claimed items. (Def.'s Stmt. Facts ¶¶ 33, 39, 46.) In addition, Ross did not have any photographs, photocopies, or videotapes of the missing items. (*Id.* ¶ 34.)

After Ross initiated this lawsuit, he continued to add to the list of missing items, but also discovered that some of the missing items were actually in his home. (*Id.* ¶¶ 44, 45, 47, 49, 51; Pl.'s Stmt. Facts ¶ 10.) As of November 10, 2010, Ross was still attempting to determine what was missing and what was simply misplaced. (Def.'s Stmt. Facts ¶ 49.) After finding certain items in his home, Ross provided Defendant — per Defendant's request — with a revised list that was on a California Casualty Homeowner's Loss Report form asking Ross to identify the date of purchase, place of purchase, and original cost of the items missing. (*Id.* ¶ 57.) Ross admits that the blank spaces and his question marks in the columns requesting the date of purchase, place of purchase, and original cost on his Homeowner's Loss Report form were due to him not knowing the information requested. (*Id.* ¶ 58; *see also* R. 76-2, Personal Property Loss Schedule, Ex. 5.) In fact, Ross admits that he has no information concerning the date of purchase of any of the missing items, can only identify the place of purchase for five items, and only knows the original cost for four items. (*Id.* ¶ 59.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "A plaintiff must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012); *see also Fleishman v. Continental Cas. Co.,* 698 F.3d 598, 603 (7th Cir. 2012) ("To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor.").

## ANALYSIS

### I.     Breach of Contract Claim – Count I

The parties agree that Illinois law governs the contractual interpretation of Ross' homeowners policy. "The required elements of a breach of contract claim in Illinois are the standard ones of common law: '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'" *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 560 (7th Cir. 2012) (citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC,* 364 Ill.App.3d 6, 845 N.E.2d 22, 30, 300 Ill.Dec. 601 (1st Dist. 2006)). "As with any contract, [courts] construe an insurance policy according to the plain and ordinary meaning of its unambiguous terms." *Grinnell Mut. Reinsurance Co. v. Haight,* 697 F.3d 582, 586 (7th Cir. 2012). "Ambiguity exists only where a

term is susceptible to more than one reasonable interpretation." *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010); *see also Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 934 (7th Cir. 2011) (Policy provisions [] are only ambiguous when reasonable minds could differ about what they mean.").

In construing an insurance policy, a court's primary objective is "to ascertain and give effect to the parties' intentions as expressed by the words of the policy." *Grinnell*, 697 F.3d at 586. "Under Illinois law, the interpretation of an insurance contract is a matter of law." *Ace American Ins. Co. v. RC2 Corp., Inc.*, 600 F.3d 763, 767 (7th Cir. 2010). More specifically, the "construction of an insurance policy and a determination of the rights and obligations of the parties thereunder are questions of law for the court to decide and may be appropriate subjects for disposition by way of summary judgment." *Geisler v. Everest Nat'l Ins. Co.*, 980 N.E.2d 1170, 1183, 366 Ill.Dec. 811, 824 (1st Dist. 2012). It is well-settled under Illinois law "that insurance contracts embody the agreement of the parties, that the terms of the policy constitute the scope of the insurer's liability, and that the insured must perform under those terms as a condition precedent to recovery." *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 679, 360 Ill.Dec. 171, 186 (2d Dist. 2012).

Here, Ross seeks to enforce his homeowners policy with California Casualty that covers his personal property. The Court turns to the language Ross' homeowners policy to determine the parties' rights and obligations under the policy. Relevant to the present motion is Ross' duty as the insured after a loss:

> **2. Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

>    a. Give prompt notice to us or our agent;
>
>    b. Notify the police in case of loss by theft;
>
>    ....
>    e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory.

(Pl.'s Stmt. Facts ¶ 15; R. 85-4, Ins. Policy, Section I – Conditions 2(e).) The parties do not argue that this language is ambiguous, and thus the Court construes this language according to its plain and ordinary meaning, namely, that Ross had a duty to provide an inventory of the missing personal property and substantiate the amount of loss with bills, receipts, and related documents as a condition to receiving his insurance benefits. *See Knezovich v. Hallmark Ins. Co.,* 975 N.E.2d 1165, 1171, 363 Ill.Dec. 856, 862 (1st Dist. 2012) ("If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning").

It is undisputed that Ross failed to provide all of the information as requested by California Causality. It is also undisputed that Ross did not provide California Casualty with the proper documentation as required by the Homeowner's Loss Report form for the majority of his claimed items, such as bills, receipts and related documents.[2] Specifically, Ross admits that he left blank spaces and question marks on the loss report form concerning the date of purchase, place of purchase, and original cost. Ross further admits that he has no information concerning

---

[2] In a letter dated February 25, 2010, Ross responded to California Casualty's request for documentation by providing his own estimates of the replacement cost of the missing property and photocopies from various website pages describing the missing items. (R. 78-8, 10/17/11 Ross Dep., Ex. 8.) Similarly, on December 21, 2010, Ross' counsel provided California Casualty with additional information concerning the proof of loss on a proof of loss form. (R. 78-10, Southerton Dep., Ex. 2, 12/21/10 letter.) This supplement, however, did not contain any bills, receipts, or other documentation substantiating Ross' insurance claim. (*Id.*)

the date of purchase of any of the missing items, he can only identify the place of purchase for five items, and he only knows the original cost for four items. Moreover, although Ross maintains that he complied with all of the policy's requirements in his Rule 56.1 Statement of Additional Facts, he fails to cite any evidence in the record supporting this claim and it is well-established in this Circuit that courts may disregard Rule 56.1 statements and responses that do not cite to the record. *See Cady,* 467 F.3d at 1060; *Cichon,* 401 F.3d at 809-10. Accordingly, Ross has failed to present sufficient evidence raising a genuine dispute as to the material fact that he did not comply with the policy's requirement to substantiate his proof of loss. *See Pekin Ins. Co.,* 968 N.E.2d at 679.

The record also reveals that on June 10, 2010, California Casualty sent Ross a letter requesting that he submit a sworn statement of proof of loss and that California Casualty did not receive any response to this June 10, 2010 request. (R. 22-1, Ex. A, Dobson Aff. ¶¶ 5, 6, Ex. D, 6/10/10 letter.) Under the circumstances, the requested sworn statement of proof of loss is a condition precedent to any recovery under the policy. *See Horton v. Allstate Ins. Co.,* 125 Ill.App.3d 1034, 1037, 467 N.E.2d 284, 285, 81 Ill.Dec. 584, 585 (1st Dist. 1984).

In sum, Ross has failed to perform the required conditions of his homeowners policy after the loss of his personal property. Because he did not perform these conditions, Ross cannot establish his breach of contract claim against California Casualty. *See MHM Servs., Inc. v. Assurance Co. of Am.,* 975 N.E.2d 1139, 1152, 363 Ill.Dec. 830, 843 (1st Dist. 2012) ("The rule of law is that a party seeking to enforce a contract has the burden of proving it has substantially complied with all material terms of the agreement."). The Court therefore grants Defendant's summary judgment motion as to Ross' breach of contract claim as alleged in Count I of the

Second Amended Complaint.

## II. Illinois Insurance Code Claim – Count II

Ross also brings a claim for attorney's fees pursuant to the Illinois Insurance Code, 215 ILCS 5/155, which states in relevant part:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs.

Simply put, "Section 155 allows for 'an extracontractual remedy' of attorney fees and costs for an insurer's 'unreasonable and vexatious' refusal to comply with its policy obligations." *Illinois State Bar Ass'n Mut. Ins. Co. v. Cavenagh,* 983 N.E.2d 468, 479, 368 Ill.Dec. 55, 66 (1st Dist. 2012); *see also General Star Indemn. Co. v. Lake Bluff Sch. Dist. No. 65,* 354 Ill.App.3d 118, 128-29, 819 N.E.2d 784, 79, 289 Ill.Dec. 288, 298 (2d Dist. 2004) ("where there is a bona fide dispute regarding coverage, costs and sanctions are inappropriate").

Here, Ross has failed to set forth any evidence that California Casualty's conduct in determining his policy coverage was vexatious and unreasonable. *See Celotex Corp.,* 477 U.S. 322 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Hence, there is no genuine dispute as to the material fact concerning Ross' attorney's fees claim, and thus California Casualty is entitled to judgment as a matter of law in this respect. *See Holloway v. Delaware County Sheriff,* 700 F.3d 1063, 1068 (7th Cir. 2012). In fact, Ross does not mention his attorney's fees claim in his summary judgment brief. *See Steen v. Myers,*

486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal brief amounts to abandonment of claims). Accordingly, the Court grants Defendant's motion for summary judgment as to Count II of the Second Amended Complaint.

## CONCLUSION

For these reasons, the Court grants Defendant's summary judgment motion, denies Defendant's Rule 702 motion as moot, and dismisses this lawsuit in its entirety.

**Dated:** May 29, 2013

                                            **ENTERED**

                                            _____
                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**